UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PATRICIA FREY,

                Plaintiff,

   v.                                          **DECISION AND ORDER**
                                                    05-CV-456S

LAURA DUDLEY, THE CITY OF BUFFALO, NY,
and THE BOARD OF EDUCATION OF THE
CITY OF BUFFALO,

                Defendants.
_____

## I. INTRODUCTION

In this civil rights action brought under 42 U.S.C. § 1983, Plaintiff Patricia Frey alleges that Defendants denied her tenure rights in violation of the Fifth and Fourteenth Amendments. Presently before this Court are the parties' Motions for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] For the reasons discussed below, Plaintiff's motion is denied and Defendants' motion is granted in part and denied in part.

---

[1] In support of their motion, Defendants filed a memorandum of law, with exhibits; a Rule 56.1 Statement of Undisputed Material Facts, with exhibits; the Affidavit of Kelly Gale Eisenried, Esq.; and the Reply Affirmation of Kelly Gale Eisenried. In opposition, Plaintiff filed a Supplemental Memorandum of Law and the Supplemental Affirmation of David J. Seeger, Esq.
    In support of her motion seeking partial summary judgment, Plaintiff filed the Affirmation of David J. Seeger, Esq., with exhibits; the Affidavit of Patricia Frey, with exhibits; a Rule 56.1 Statement of Undisputed Material Facts; a memorandum of law, the Supplemental Affirmation of David J. Seeger, Esq., with exhibits; and a reply memorandum of law. In opposition, Defendants filed the Affirmation of Kelly Gale Eisenried, Esq.

## II. BACKGROUND

**A. Facts**

On July 8, 1970, the City of Buffalo Board of Education hired Plaintiff as a full-time probationary math teacher, effective September 1, 1970. (Plaintiff's Statement, ¶ 1[2]; Defendants' Statement, p. 2.[3]) Plaintiff successfully completed her probationary period and was awarded tenure as a secondary mathematics teacher (grades seven through twelve) in 1975. (Plaintiff's Statement, ¶ 2; Defendants' Statement, p. 2.) Plaintiff taught mostly secondary math in the Buffalo Public Schools from the date of her hire through the 1997-1998 academic year and consistently received favorable reviews. (Plaintiff's Statement, ¶¶ 4, 5; Defendants' Statement, p. 2.) Plaintiff is certified in New York for Secondary Mathematics (grades 7-12), Elementary Education (nursery, kindergarten, and grades 1-6), and School District Administration. (Plaintiff's Statement, ¶ 3.)

In September 1998, Plaintiff applied for and was hired as a Temporary Project Administrator in the Department of Human Resources within the Buffalo Public School District, which was an administrative position. (Plaintiff's Statement, ¶ 6; Defendants' Statement, p. 2.) Plaintiff was promoted to Supervisor of Instruction and Employment in 2000, and then to Director of Staffing and Retention in 2002. (Plaintiff's Statement, ¶¶ 8, 9; Defendants' Statement, p. 2.) Plaintiff served as Director of Staffing and Retention through the 2002-2003 academic year. (Plaintiff's Statement, ¶ 7.)

In the Spring of 2003, the Buffalo Public School District abolished a number of

---

[2] Referring to Plaintiff's Rule 56.1 Statement of Undisputed Facts. (Docket No. 41-8.)

[3] Referring to Defendants' Rule 56.1 Statement of Undisputed Material Facts, which contains citations to the record evidence. (Docket No. 38.)

administrative positions due to a budget crisis, one of which was Plaintiff's position as Director of Staffing and Retention. (Defendants' Statement, p. 2.) Plaintiff's position was terminated effective June 30, 2003. (Plaintiff's Statement, ¶ 10; Defendants' Statement, p. 3.)

After learning that her position was abolished, Plaintiff contacted Debra Sykes, Director of Mathematics for the Buffalo Public School District, regarding any vacancies in the mathematics department for the 2003-2004 academic year. (Plaintiff's Statement, ¶ 11; Defendants' Statement, p. 3.) Plaintiff also advised other Buffalo Public School District officials that she wanted to teach secondary mathematics. (Plaintiff's Statement, ¶ 11.) According to her deposition, Sykes advised Plaintiff that she would likely have a secondary math position for her, but that Plaintiff would have to wait until Sykes had more details about the District's staffing needs. (Defendants' Statement, pp. 3-4; Sykes Dep., Docket 38-6, p. 18.)

In August 2003, Dr. Yvonne Minor-Regan, Principal of Public School 68, telephoned Plaintiff and advised her that a position as a Title I math teacher (corrective math) was available at School 68. (Defendants' Statement, p. 4.) After an interview, Plaintiff was offered and accepted the Title I corrective math position for the 2003-2004 academic year. (Defendants' Statement, p. 4.) Sykes was informed that Plaintiff accepted this position. (Sykes Dep., p. 18.) According to Sykes, all corrective math positions for the 2003-2004 academic year were temporary positions. (Defendants' Statement, p. 4.) Plaintiff worked at School 68 teaching corrective math for the 2003-2004 academic year. (Defendants' Statement, p. 4.) Plaintiff does not have tenure in corrective math.

Plaintiff maintains that Defendants should have offered her a permanent teaching

position in secondary math, one of her tenure areas. Sykes testified at her deposition that "[Plaintiff] took the job as a corrective math teacher, so we never got to that point of offering her a job in secondary mathematics." (Sykes Dep., p. 27.) Sykes stated that if Plaintiff had not taken the job at Public School 68, she would have continued to be on the list for secondary math positions. (Sykes Dep., p. 27.) Plaintiff contends that she had the right to be offered a tenure position in secondary math regardless of whether she accepted a position with Public School 68.

On June 30, 2004, Plaintiff retired from the Buffalo Public Schools. (Defendants' Statement, p. 5.) This made her eligible to collect an Early Retirement Incentive pursuant to the collective bargaining agreement between the Buffalo Board of Education and the Buffalo Teachers Federation (the teachers' union). (Defendants' Statement, p. 5.) The Early Retirement Incentive, together with Plaintiff's termination pay, amounted to $47,000. (Defendants' Statement, p. 5.)

After Plaintiff's retirement, Public School 68 converted to the Westminster Charter School. (Defendants' Statement, p. 5.) The Westminster Charter School then hired Plaintiff as its Math Coordinator. (Defendants' Statement, p. 5.) Plaintiff negotiated an individual employment contract that allowed her to collect her $43,326.08 pension, as well as an annual salary of $40,000. (Defendants' Statement, p. 5.)

**B.    Procedural History**

Plaintiff commenced this action on June 28, 2005, by filing a Complaint in the United States District Court for the Western District of New York. (Docket No. 1.) Defendants filed an Answer on July 18, 2005. (Docket No. 2.) After completion of discovery and


significant mediation efforts, the parties filed motions for summary judgment on March 6, 2007.  (Docket Nos. 36, 41.)  This Court took the fully-briefed motions under advisement on June 21, 2007, without oral argument.  (Docket No. 51.)

### III.  DISCUSSION AND ANALYSIS

**A.**     **Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under governing law." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S.Ct.1598, 1609, 26 L.Ed.2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

**B.      42 U.S.C. § 1983**

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. See 42 U.S.C. § 1983. On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution. See Graham v. Connor, 490 U.S. 386, 393-94,109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979)). Accordingly, as a threshold matter in reviewing claims brought pursuant to § 1983, it is necessary to precisely identify the constitutional violations alleged. See Baker, 443 U.S. at 140. Here, Plaintiff asserts Due Process and Equal Protection claims under the Fifth and Fourteenth Amendments.

**C.      Plaintiff's Procedural Due Process Claim**

Plaintiff moves for summary judgment on her claim that Defendants abrogated her constitutionally-protected tenure rights by failing to hire her as a permanent teacher in her tenure area after her administrative position was abolished. Defendants move for summary judgment in their own favor, arguing that Plaintiff did not have the right to be hired as a permanent teacher in her tenure area.

The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. Property interests are created and defined by "existing rules or understandings that stem from an independent source such as state law — rules or

6

understandings that secure certain benefits and that support claims of entitlement to those benefits." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).  Individuals with tenure, such as Plaintiff, have a constitutionally-protected property right in their tenure status that cannot be deprived without due process. See id.; DeMichele v. Greenburgh Cent. Sch. Dist. No. 7, 167 F.3d 784, 789 (2d Cir. 1999) (public employee who can be discharged only for cause has a constitutionally-protected property interest in her tenure and cannot be fired without due process).

    The issue here is whether Plaintiff's tenure rights included the right to return from an abolished administrative position to a permanent teaching position in her tenure area. Plaintiff argues that various New York State Commissioner of Education decisions establish that she had such a right.  Those decisions generally hold that "[a]n individual whose services are terminated as a result of the abolition of a position has the right to appointment to a vacancy which then exists or which may thereafter exist in a tenure area in which the individual has served." Matter of Suchak, Decision No. 15,411, 45 Ed. Dept. Rep. __ (May 26, 2006)[4]; see also Matter of Torreano, Decision No. 11,126, 23 Ed. Dept. Rep. 38 (August 9, 1983); Matter of Ives, Decision No. 9423, 16 Ed. Dept. Rep. 341 (April 18, 1977); Matter of Fitzgibbons, Decision No. 8012, 8 Ed. Dept. Rep. 205 (June 17, 1969).

    But the Commissioner's decisions in this area involve teachers or administrators moving within teacher or administrative tenure areas. See, e.g., Matter of Suchak, Decision No. 15,411 (attendance teacher whose position was abolished was entitled to appointment in her former tenure area of reading teacher); Matter of Ives, Decision No.

---

[4] Available at http://www.counsel.nysed.gov/Decisions/volume45/d15411.htm.

9423 (guidance counselor whose position was abolished was entitled to appointment in her former tenure area of English teacher); Matter of Fitzgibbons, Decision No. 8012, (individual who was terminated from probationary position as a middle school principal was entitled to placement on a preferred-eligible list in his former tenure area of elementary school principal). These factually-distinguishable decisions do not establish a right for an administrator whose position is abolished to return to a position in her former teaching tenure area.

In her affidavit, Plaintiff states that it was "longstanding practice and custom" for the Buffalo Public School District to allow tenured teachers who had moved into administrative positions to return to teaching in their tenure areas when their administrative positions were abolished. (Frey Aff., ¶¶ 38, 39.) But it is unclear whether this "practice and custom" constitutes an enforceable right to such placement. It is possible that this "practice and custom" was pursuant to terms of a collective bargaining agreement or some other contract. For example, in Girard v. Bd. of Ed. of City Sch. Dist. of City of Buffalo, the court noted that an Assistant Superintendent whose position was abolished could continue her employment with the district by seeking assignment to a guidance position (her former tenure area). 572 N.Y.S.2d 185, 187 (4th Dept. 1991). This conclusion was based solely on the petitioner's rights under her collective bargaining agreement. Id. at 186-87. The court specifically stated that the petitioner's rights upon the abolishment of her administrative position "were limited to those given to her under Education Law § 2585 and the provisions of [the] negotiated labor contract." Id. at 187.

New York Education Law § 2585(4) requires that an individual whose position is abolished be placed on a preferred-eligible list for appointment to any position similar to

the abolished position that exists or may exist in the future as follows:

> If an office or position is abolished or if it is consolidated with another position without creating a new position, the person filling such position at the time of its abolishment or consolidation shall be placed upon a preferred eligible list of candidates for appointment to a vacancy that then exists or that may thereafter occur in an office or position similar to the one which such person filled without reduction in salary or increment, provided the record of such person has been one of faithful, competent service in the office or position he has filled. The persons on such preferred list shall be reinstated or appointed to such corresponding or similar positions in the order of their length of service in the system.

Under this provision, Plaintiff was entitled to be placed on the preferred-eligible list only for positions similar to Director of Staffing and Retention that were available or became available.[5] Contrary to Plaintiff's argument, § 2585(4) does not provide "a re-employment right to fill a vacancy arising in her tenure area (Secondary Mathematics)." (Plaintiff's Reply Memorandum, Docket No. 48, pp. 2-3.)

Although neither party has submitted the governing collective bargaining agreement, this Court finds on the record before it that there is a genuine issue of material fact concerning whether Plaintiff had the right to resume teaching in her tenure area after her administrative position was abolished. Plaintiff maintains that there was a longstanding policy and custom of allowing tenured teachers who had moved into administrative positions to return to teaching in their tenure areas when their administrative positions were abolished. (Frey Aff., ¶ 38, 39.) Sykes buttresses this contention with her deposition

---

[5]Plaintiff's acceptance of the corrective math position at Public School 68 did not relieve Defendants of their obligation to place Plaintiff on the preferred-eligible list for positions similar to Director of Staffing and Retention. See Lewis v. Cleveland Hill Union Free Sch. Dist., 506 N.Y.S.2d 608 (4th Dept. 1986) (right to placement on preferred-eligibility list is not waived or extinguished by acceptance of another position).

9

testimony that when administrators' positions are eliminated, "there's a whole list of rules you have to follow negotiated with the BTF, Buffalo Teachers Federation" to determine whether they can resume a teaching position. (Sykes Dep., Docket No. 38-6, Exhibit E, p. 10.) This suggests that Plaintiff may have had a tenure right to be placed on a preferred-eligible list for a teaching position in one of her tenure areas after her administrative position was abolished.

But another witness, Edith LeWin, who is an administrator with the Buffalo Teachers Federation, testified that she was not certain whether there was a *policy* of returning administrators to teaching positions in their tenure area, but that it was the school district's *motivation* to do so. (LeWin Dep., Docket No. 38-7, Exhibit F, p. 25.) She stated that the District "traditionally tried to help everyone that was being laid off when layoffs were necessary" to "avoid those individuals who were probationary and tenured from hitting the streets." (LeWin Dep., Docket No. 38-7, Exhibit F, p. 25.) LeWin described the practice as "a very mixed bag," which suggests that if it existed at all, the practice was short of being a protected tenure right. (LeWin Dep., Docket No. 38-7, Exhibit F, p. 25.)

In light of this conflicting evidence, and without the collective bargaining agreement, this Court cannot determine whether Plaintiff's tenure rights included the right to reappointment in her tenure area upon the abolishment of her administrative position. Summary judgment in either party's favor is therefore precluded.

D.     **Plaintiff's Equal Protection Claims**

Plaintiff alleges in her Complaint that Defendants violated her Equal Protection rights by reassigning other administrators whose positions were abolished to supervisory

positions, but not doing the same for her.  Plaintiff has apparently abandoned this claim since she did not oppose Defendants' motion.  In any event, Defendants are also entitled to summary judgment because Plaintiff failed to offer evidence in support of her claim, failed to respond to Defendants' motion, and failed to prosecute this cause of action.  See Fed. R. Civ. P. 56(e)(2) (providing that if opposing party fails to respond, summary judgment should be granted).

## IV.  CONCLUSION

For the reasons stated above, the parties' motions for summary judgment on Plaintiff's Due Process claim are denied.  Defendants' motion for summary judgment on Plaintiff's Equal Protection claim is granted.

## V.  ORDERS

IT HEREBY IS ORDERED, that Plaintiff's Motion for Partial Summary Judgment (Docket No. 41) is DENIED.

FURTHER, that Defendants' Motion for Summary Judgment (Docket No. 36) is GRANTED in part and DENIED in part.

FURTHER, that counsel shall appear before this Court for a status conference on August 11, 2008 at 9:00 a.m.

SO ORDERED.

Dated:      July 13, 2008
            Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge